**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**SUZANNE ROSSET**,

**Plaintiff,**

**v.** **Case No. 8:05-CV-33-T-EAJ**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

**Defendant.**

______________________________________/

**FINAL ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Section 405(g) et seq., to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying benefits.[1]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

**A. Standard of Review**

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g)(2003). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the

---

[1] The parties have consented to proceed before the Magistrate Judge pursuant to 28 U.S.C. § 636©) and Fed.R.Civ.P. 73. (Dkt. 9).

Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814, F.2d 585, 588 (11th Cir. 1987).

**B. Factual Background**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on October 9, 2001, claiming an onset of disability beginning November 8, 1999. (T 51-54) Plaintiff's application was denied initially, upon reconsideration, and by the Administrative Law Judge (ALJ) in a decision issued on September 15, 2003. (T 34-43, 13-21) The Appeals Council declined to review the ALJ decision (T 4-6), making the ALJ's decision the final decision of the Commissioner.

The ALJ found that Plaintiff was not eligible for DIB benefits because she was not disabled at any time through the ALJ's decision on September 15, 2003. (T 20-21) Disability benefits were denied. (T 21) Plaintiff filed a timely petition for judicial review of the Commissioner's denial of benefits. Plaintiff has exhausted all administrative remedies and the Commissioner's decision is ripe for review under the Act.

Plaintiff was 41 years old at the time of the administrative hearing on June 26, 2003. (T 580) Plaintiff attended school through 12th grade and received a high school diploma. Id. Plaintiff's past relevant work experience consists of secretarial work, assembly line work, bookkeeping, and

cashiering. (T 582) Plaintiff asserts that reflex sympathetic dystrophy, a herniated disc in her neck, and short-term memory loss have rendered her unable to work since November 8, 1999. (T 59).

Following the administrative hearing on June 23, 2003, the ALJ found that Plaintiff suffered from fibromyalgia, cervical and lumbar strain, mild depression, and possible reflex sympathetic dystrophy of the right leg. (T 14) The ALJ determined that the above impairments are severe, but that Plaintiff's impairments or combination of impairments do not meet or medically equal the impairments listed in Appendix 1, Subpart P of Regulations No. 4. (T 14) The ALJ held that Plaintiff could not perform her past relevant work, but that she could perform a reduced range of sedentary work activity.[2] (T 18) Specifically, the ALJ noted that Plaintiff is limited to carrying up to 10 pounds occasionally, can sit a total of 6 out of 8 hours but must be allowed to sit/stand. He also limited her to occasional bending, stooping, crouching, and kneeling; further, he found that Plaintiff had an occasional limitation in concentrating on assigned tasks, but retained the mental capacity to perfom routine tasks in an environment without temperature extremes. (Id.) Relying on the testimony of a vocational expert (VE) in response to a hypothetical question which incorporated these limitations, the ALJ concluded that Plaintiff could perform jobs such as charge account clerk, surveillance systems monitor, and order clerk. (T 18)[3] In reaching the conclusion that Plaintiff had not been under a "disability" since November 8, 1999, the ALJ held that Plaintiff's statements regarding her symptoms and impairments were not wholly credible. (T 20)

---

[2]Sedentary work, defined at 20 C.F.R. §§ 404.1567(a), 416.967(a), involves the lifting of not more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools.

[3]Plaintiff was found to meed the disability insured status requirements, however, through the date of the ALJ's decision. (T 13)

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

**C. Discussion**

Plaintiff argues that the Commissioner erred by: (1) not giving proper weight to Plaintiff's treating physicians, (2) improperly evaluating Plaintiff's pain testimony, (3) posing incomplete hypothetical questions to the vocational expert, and (4) engaging in "sit and squirm" jurisprudence. (Dkt. 11 at 8-13). Defendant maintains that the ALJ's decision is supported by substantial evidence, and that the ALJ evaluated Plaintiff's claims under proper legal standards. (Dkt. 14).

**1. Plaintiff's Treating Physicians**

Plaintiff argues that the ALJ did not give the opinions of Plaintiff's treating physicians substantial weight and failed to articulate good cause for rejecting those opinions. (Dkt. 11 at 8-9). Plaintiff asserts that the ALJ disregarded the medical opinion of Dipti Mehta, M.D. ("Dr. Mehta"), the psychological evaluation of Steven Kanakis, Psy.D. ("Dr. Kanakis"), and the opinion of neurologist Tim Frederick, M.D. ("Dr. Frederick"), and instead gave substantial weight to the opinion of the consultative physician.[4] Id. at 9. Specifically, Plaintiff alleges that the ALJ disregarded Dr. Mehta's RFC for pain and fibromyalgia, the opinion of Dr. Kanakis that Plaintiff is unable to work, and the opinion of Dr. Frederick that Plaintiff is unable to work. Id.

---

[4]Although Plaintiff does not identify the consultative physician to whom she refers, it appears that she is referring to Dr. Ramana Amar, M.D. ("Dr. Amar"), who examined Plaintiff on February 12, 2002. (T 16) This is the only consultative examination referred to in the ALJ's decision. Dr. Amar conducted a consultative examination of Plaintiff on February 12, 2002. The ALJ noted Dr. Amar's observations that Plaintiff got on and off the examination table with no difficulty, had normal heel and toe gait pattern, normal range of motion on both shoulders, elbows, and hands, and normal muscle strength and sensation in the upper extremities. (T 16)

Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982). However, the opinion of a treating physician may be discounted if it is unsupported by objective medical evidence, conclusory, or contrary to the evidence. Bloodsworth, 703 F.2d at 1240; accord Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987).

Dr. Kanakis

The ALJ expressly considered Plaintiff's two consultative evaluations by Dr. Kanakis and determined that these evaluations show mild depression with no more than mild restrictions in activities of daily living, mild restrictions in social functioning, and mild difficulties in maintaining concentration, persistence, and pace. (T 17) The ALJ also noted that Plaintiff had reported one episode of loss of employment due to pain and memory problems; the record cite provided by the ALJ is for the 2002 evaluation. (T 17, 176)

At the outset, it is doubtful whether Dr. Kanakis qualifies as a treating physician because Dr. Kanakis saw Plaintiff for consultative examinations on only two occasions: February 1, 2002 (T 175-177) and again on May 27, 2003 (T 562-564). It is clear that the opinions of a one-time examiner do not require the same type of deference as a treating physician. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). The fact that Dr. Kanakis saw Plaintiff on two occasions does not transform his status to that of a treating physician. See e.g George v. Bowen, 692 F.Supp. 215, 219 (S.D. N.Y. 1988)(physician who treated a claimant on only two occasions was not a "treating physician").

While Plaintiff asserts that the ALJ disregarded Dr. Kanakis' evaluation "about the

claimant's inability to work" (Dkt. 11 at 9), the record reveals no such conclusion by Dr. Kanakis. Although Dr. Kanakis did state in his 2003 report that Plaintiff's prognosis "is guarded due to the connection between her physical and psychological states" (T 564) and that Plaintiff was believed to be at "some risk of suffering decompensation in a work-like setting" (Id.), he did not state that Plaintiff was unable to work. Notably, in the earlier evaluation, Dr. Kanakis opined that Plaintiff had a fair prognosis and was not believed to be at risk of decompensation in a work like setting. (T 177 )

In finding that Dr. Kanakis' reports showed that Plaintiff has mild depression, the ALJ properly exercised his fact-finding role in weighing the evidence and resolving any inconsistencies in the evidence. Plaintiff has not demonstrated any error in evaluating this medical source opinion.

Dr. Frederick

Plaintiff also asserts that the ALJ disregarded Dr. Frederick's opinion that Plaintiff is unable to work. (Dkt. 11 at 9) Dr. Frederick examined Plaintiff on July 28, 2000, apparently for consultative purposes because his report is addressed to an insurance company. (T 244-251) His status as a treating physician is also questionable; no other reports from Dr. Frederick are shown in the administrative record index (T 1-2) and no other records from this physician have been cited by Plaintiff.

While not mentioning Dr. Frederick by name, the ALJ's decision expressly refers to this evaluation by citing to the administrative record exhibit number and discussing testing performed by a neurologist in July 2000. (T 15) The findings noted were: negative CT scan of the head, negative x-ray of the right foot, negative views of the cervical spine, normal EMG and MRI tests of the left arm, and single level disc degeneration of the cervical spine at the C5-6 level. (T 15, 249)

Concluding his report, Dr. Frederick stated that Plaintiff's right leg and back pain were a direct result of her August 20, 1999 motor vehicle accident, but that further studies would be needed to determine whether her neck problem or peripheral arm problem were attributable to the accident. (T 250) He recommended a repeat MRI and EMG study to further evaluate these issues. (Id.) He also noted that Plaintiff had objective findings of a right S1 radiculopathy manifest by decreased ankle reflex, also shown by positive findings of straight leg raising in all three positions and that Plaintiff also had subjective symptoms of tingling in her large right toe "which would fit a sensory radiculopathy in the L5 distribution of the right leg." (T 251)

Dr. Frederick then stated in his report: "At this point, I do not believe Ms. Rosset is capable of working." (T 251) He added: "A statement regarding permanency, disability, and restrictions wold be deferred until these recommended studies are obtained. The patient should also undergo a lumbar MRI to evaluate the integrity of the disc in that area." (Id.)

The ALJ did not discuss these statements of Dr. Frederick. There is no indication in the record that Dr. Frederick evaluated Plaintiff or any of her records other than on this one occasion. Thus, Dr. Frederick was a one-time examiner, not a treating physician, and the ALJ's failure to specifically address this statement and show good cause for rejecting it was not an error of law. Moreover, Dr. Frederick's belief that Plaintiff could not work at the time of his evaluation is reasonably viewed as tentative in view of his other statements that additional testing was needed before he could provide any specific restrictions.

Dr. Mehta

In contrast to the other two medical sources previously discussed, Dr. Mehta does qualify

as a treating physician.[5] Dr. Mehta treated Plaintiff from approximately August 2002 through at least May 2003 and one page handwritten notes signed by Dr. Mehta comprise most of these records. (T 531-548) Among these records are several messages when Plaintiff phoned into the office. (T 542-544, 547)

On May 30, 2003, Dr. Mehta completed two residual functional capacity questionnaires submitted by Plaintiff's attorney. One questionnaire was captioned "CHRONIC PAIN Residual Functional Capacity Questionnaire" (T 509-516); the other was titled "Fibromyalgia Residual Functional Capacity Questionnaire (T 517-524).

On the chronic pain questionnaire, which addressed Plaintiff's complaints of reflex sympathetic dystrophy (RSD), Dr. Mehta wrote "do not think she can hold job." (T 516 ) On that form, he noted that Plaintiff would "often" have to take unscheduled breaks at work. (T 514) He opined that she was unable to lift 10 or more pounds and could only lift less than that occasionally. (T 514) Plaintiff could stand/walk less than two hours and could sit about four hours in an eight-hour day. (T 513) Dr. Mehta stated that Plaintiff was significantly limited in doing repetitive reaching, handling, or fingering. (T 515) He also noted that Plaintiff had a significant memory impairment. (T 516) In response to a questions asking whether Plaintiff was a malingerer, Dr. Mehta wrote "unclear." (T 512 ) He assessed her complaints of "diffuse bilateral pain" as constant and rated them "5/10" in severity. (T 510) However, he rated the prognosis for her RSD as "fair." (T 509)

In the other questionnaire relating to fibromyalgia, Dr. Mehta rated Plaintiff's prognosis as "fair" and stated that there were no objective signs of this condition except for "diffuse points of

[5] The record does not reveal Dr. Mehta's area of specialty as a physician.

tenderness (T 517, 519) However, Dr. Mehta did put a check mark for the following other symptoms: chronic fatigue, muscle weakness, irritable bowel syndrome, breathlessness, morning stiffness, frequent, severe headaches, and numbness. (T 518) Dr. Mehta noted that Plaintiff's other impairments were RSD and gastritis. (T 517) Regarding Plaintiff's restrictions, Dr. Mehta essentially stated the same limitations as in the chronic pain questionnaire. (T 519-524)

The ALJ noted Dr. Mehta's opinion that fibromyalgia may be a viable diagnosis for Plaintiff's condition and Dr. Mehta's opinion that Plaintiff is unable to work. (T 17) The ALJ also commented on Dr. Mehta's assessment that Plaintiff did not meet the criteria for fibromyalgia and had "no objective finding except for diffused points of tenderness." (Id.)

Because Dr. Mehta's limitations were "not supported by the objective evidence and appear to be premised on the claimant's subjective complaints," the ALJ declined to give them controlling weight. (T 19)

Plaintiff does not offer any evidence undermining the ALJ's conclusion that Dr. Mehta's opinions are based solely on Plaintiff's subjective complaints. Indeed, a review of the one-page handwritten treatment notes authored by Dr. Mehta reveal only the most basic information: vital signs, current problems, and treatment plans. The comprehensive restrictions listed in Dr. Mehta's RFC statements and the findings regarding the severity of her complaints are not found anywhere in Dr. Mehta's treatment records.

In addition, the ALJ throughly discussed medical evidence from other treating and examining sources, none of whom made any significant findings approximating what Dr. Mehta stated. (T 15-17) The lack of corroboration of Dr. Mehta's findings reinforces the conclusion that Dr. Mehta's restrictions are unsupported by the record.

In conclusion, the ALJ expressly addressed Dr. Mehta's proposed work-related restrictions for Plaintiff and cited good cause for rejecting them. Plaintiff's argument to the contrary is without merit.

**2. Plaintiff's Testimony**

Plaintiff next claims that the ALJ did not give proper weight to Plaintiff's testimony because Plaintiff's subjective complaints of pain are supported by the objective medical evidence and are consistent with her previous complaints to her treating physicians. (Dkt. 11 at 10). Addressed with this argument is Plaintiff's fourth argument: whether the ALJ improperly engaged in "sit and squirm jurisprudence." (Dkt. 11 at 12). Since this argument is related to Plaintiff's credibility, it will be discussed here as well.

The Eleventh Circuit has established a three-part pain standard to use when evaluating a claimant's subjective complaints of pain. A plaintiff must show: (1) evidence of an underlying medical condition, and either (2) the medical evidence substantiates the severity of the pain from the condition, or (3) that the condition is of sufficient severity that it would be reasonably expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986). This standard is consistent with Social Security regulations which provide that a claimant may establish a disability through subjective testimony of pain if "medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms." Elam v. R. R. Ret. Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (citing 20 C.F.R. §§ 404.1529, 416.929).

Plaintiff argues that the ALJ improperly engaged in "sit and squirm" jurisprudence, whereby the ALJ evaluates Plaintiff's disability based on whether Plaintiff's behavior at the administrative hearing comports with the ALJ's subjective expectations for observable symptoms. (Dkt. 11 at 12).

Defendant maintains that the ALJ properly discredited Plaintiff's allegations of disabling pain as not supported by the medical evidence, and that the ALJ credited Plaintiff's allegations of pain, as shown by the finding that Plaintiff was restricted to sedentary work. (Dkt. 14 at 14-15).

"Sit and squirm" jurisprudence takes place when "an ALJ who is not a medical expert will subjectively arrive at an index of traits which he expects the claimant to manifest at the hearing. If the claimant falls short of the index, the claim is denied." Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982). However, the ALJ may consider the claimant's appearance and demeanor during the hearing among other criteria in making credibility determinations, so long as he does not use his observations to reject objective medical evidence. Norris v. Heckler, 760 F.2d 1154, 1158 (11th Cir. 1985).

At the beginning of his decision (T 14), the ALJ recounted Plaintiff's testimony as to why she cannot work:

> At the hearing, the claimant alleged disability due to daily, severe headaches, neck pain which radiates into her arms, fibromyalgia symptoms "mostly on the right side," and arthritis in her low back with pain radiating into her right foot. Ms. Rosset rated her headaches and musculoskeletal pain at 7 to 8 on a scale of 0 to 10. She also alleged cognitive difficulties and depression with memory and concentration difficulties. She attributed her physical and mental symptoms to a motor vehicle accident which occurred in August 1999. Additionally she reported abdominal pain and diarrhea, and said that she was recently diagnosed with diverticulosis.
>
> The claimant said her impairments limit her to sitting, standing or walking only 5 minutes and prevent her from lifting more than a gallon of milk. Ms. Rosset added that she must lie down 5 hours per day due to headaches and body pain.

After evaluating the medical evidence and Plaintiff's testimony, the ALJ concluded that Plaintiff's statements concerning her impairments and their impact on her ability to work were not credible in light of the (1) objective medical findings of treating and consulting physicians: (2)

Plaintiff's tendency to embellish her complaints of pain; (3) Plaintiff's description of her daily activities and lifestyle;[6] and (4) on false information Plaintiff provided to a treating physician on February 12, 2002, indicating her foot was in traction for 6 months and surgery on her neck was optional. (T 17)

Additionally, in evaluating the medical evidence, the ALJ stated that Plaintiff complained of abdominal pain, but that a CT scan of the abdomen and an ultrasound were normal. (T 18) The ALJ recognized that a colonoscopy showed internal hemorrhoids and right-sided diverticulosis, but held that these impairments were not severe. (T 18) The ALJ acknowledged Plaintiff's claim that she must lie down for several hours daily due to headaches, but stated that the objective medical evidence did not support those allegations. (T 19) The ALJ noted that headaches were not mentioned in Plaintiff's medical records for two years prior to his decision. (T 19)

The ALJ did mention Plaintiff's appearance at the hearing, stating:

> At the hearing, I observed the claimant was thin and well groomed. She walked with a slight limp. She initially made a very positive impression; however, she then described pain at "7" to "8" level throughout her body. This testimony is difficult to accept because with the constant pain she described, she would have real difficulty sitting in the hearing room. There was no indication of pain and she sat comfortably. (T 15)

Although the ALJ did not expressly cite to the applicable pain standard, his findings and discussion indicate that the ALJ was aware of and applied the proper standard. See Wilson v.

---

[6] Based on a statement Plaintiff provided to the Social Security Administration on November 21, 2001 the ALJ noted that Plaintiff cares for her personal needs, does laundry, cooks with help from her husband, performs, some light housekeeping chores, visits with relatives in her home, talks on the phone daily, shops, dines in restaurants monthly, and handles her finances. (T 15, 78-83) He also observed that Plaintiff testified that a friend helps her clean house and takes her grocery shopping. (T 15)

Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002). Therefore, the only question remaining is whether the ALJ's assessment of Plaintiff's testimony regarding her pain and other restrictions is based on substantial evidence. The court concludes that it is. The ALJ cited several specific reasons for rejecting Plaintiff's testimony as to the intensity of her symptoms and the effect of her impairments. Plaintiff has not shown that the reasons cited by the ALJ are missing from the record, were misinterpreted, or were incorrect.[7] Substantial evidence supports the ALJ's adverse credibility determination. See generally Allen v.Sullivan, 880 F.2d 1200, 1203 (11th Cir. 1989) Further, the mention of Plaintiff's demeanor at the hearing is only one of a number of factors which the ALJ relied on in finding Plaintiff not fully credible. Thus, the ALJ did not engage in improper "sit and squirm" jurisprudence.

**3. ALJ's Hypothetical Question**

Plaintiff argues that the Commissioner erred by posing incomplete hypothetical questions to the vocational expert ("VE"). Once a claimant has met his initial burden of showing that he cannot do past work, the testimony of a VE is generally required to determine whether the claimant's residual functional capacity permits him to perform other work. Chester v. Bowen, 792 F.2d 129, 131-32 (11th Cir. 1986) (citation omitted). The Commissioner may use this vocational testimony to show that there are other jobs in the national economy which plaintiff can perform. Id.

In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987)).

---

[7] As the ALJ pointed out in his decision, a number of medical reports in the record show that objective tests were mostly negative and findings on physical examination were minimal for the most part. (T 15-16)

The ALJ is only required to include those restrictions he recognizes in the hypothetical question to the VE. See Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994).

In this instance, the ALJ relied on the testimony of a VE, William Harvey, to establish that there are other jobs in the national economy that Plaintiff could perform. (T 596-600) The ALJ asked the VE the following hypothetical question:

> "Assume an individual with the same education, has the same education [sic], age, and work experience as the claimant, has the following residual functional capacity: capable of sedentary work with a sit/stand option; with an occasional limitation for bending, stooping, crouching, and kneeling; and an occasional limitations for concentrating on tasks assigned, but capable of performing routine tasks in an environment without temperature extremes. Are there any jobs?"

(T 598) The VE responded in the affirmative and listed the jobs of charge account clerk, surveillance system monitor, and order clerk. Id.

Other than asserting in a very general fashion that the ALJ's hypothetical was incomplete, Plaintiff has not pointed out additional information which should have been included. Plaintiff's alternate hypothetical to the VE encompassed the limitations which Dr. Mehta provided in the RFC questionnaires propounded by Plaintiff's counsel. (T 579-580) The ALJ properly disregarded Dr. Mehta's restrictions, as stated previously. Therefore Plaintiff has not shown any error regarding the vocational expert testimony upon which the ALJ relied in determining that there were jobs in the national economy which Plaintiff could perform despite her severe impairments.

**D. Conclusion**

The AlJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner denying Plaintiff's application for Disability Insurance Benefits is therefore affirmed.

Accordingly and upon consideration, it is **ORDERED** that:

(1) the decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED**, each party to bear its own costs and expenses; and

(2) the Clerk of Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. 405(g).

**DONE AND ORDERED** in Tampa, Florida on this 31st day of March, 2006.

ELIZABETH A JENKINS
United States Magistrate Judge